UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEREK W.

                Plaintiff,

v.                                                    1:20-CV-1437
                                                  (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                                   OF COUNSEL:

BRANDI CHRSITINE SMITH, ESQ.
  Counsel for Plaintiff
105 Delmar Mitchell Dr.
Buffalo, NY 14204

LAW OFFICES OF KENNETH HILLER, PLLC    KENNETH HILLER, ESQ.
  Counsel for Plaintiff
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                     HEETANO SHAMSOONDAR, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 17.)  The court has jurisdiction over this matter pursuant to

42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born in 1981. (T. 43.) He completed the 8th grade. (T. 159.) Generally, Plaintiff's alleged disability consists of herniated disc in spine, high blood pressure, cirrhosis of the liver, pancreatitis, chronic obstructive pulmonary disease ("COPD"), sleep apnea, anxiety, depression, bipolar disease, and "anger issues." (T. 158.) His alleged disability onset date is April 10, 2017. (T. 43.)

   B.  **Procedural History**

On May 30, 2017, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 43.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 25, 2019, Plaintiff appeared before the ALJ, Mary Mattimore. (T. 28-42.) On July 23, 2019, ALJ Mattimore issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 10-26.) On August 7, 2020, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.  **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 15-22.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 30, 2017. (T. 15.) Second, the ALJ found Plaintiff

had the severe impairments of obesity, cirrhosis of the liver, hepatic encephalopathy, pancreatitis, polysubstance abuse, lumbar disc herniations, major depressive disorder, anti-social personality disorder, anxiety disorder, and bipolar disorder.  (T. 15-16.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 16.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except he can perform a low stress job defined as simple routine work and make simple workplace decisions not at a production rate pace (assembly line pace); can maintain attention and concentration for two-hour blocks of time;  and can tolerate minimal changes in workplace processes and settings.  (T. 18.)[1]  Fifth, the ALJ determined Plaintiff unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 21-22.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes one argument in support of his motion for judgment on the pleadings.  Plaintiff argues the ALJ's mental RFC determination was not supported by substantial evidence because the ALJ failed to obtain missing records.  (Dkt. No. 12 at

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

5-9.)[2]  Plaintiff also filed a reply in which he reiterated his original argument.  (Dkt. No. 15.)

### B. Defendant's Arguments

In response, Defendant makes one argument.  Defendant argues the agency fulfilled its duty to develop the record and the RFC finding is supported by substantial evidence.  (Dkt. No. 14 at 8-11.)

## III. RELEVANT LEGAL STANDARD

### B. Standard of Review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard."  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).  In particular, it requires deference "to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).  It is not the Court's "function to determine *de novo* whether a plaintiff is disabled."  *Brault,* 683 F.3d. at 447.  "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks

---

[2]  Elsewhere Plaintiff asserts the ALJ's physical RFC determination was not supported by substantial evidence because the ALJ failed to obtain missing records.  (Dkt. No. 12 at 1.)  This appears to be a typographical error.

omitted). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.' " *Brault,* 683 F.3d at 448. The Court "require[s] that the crucial factors in any determination be set forth with sufficient specificity to enable [the reviewing Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (alterations and internal quotation marks omitted).

### C. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022).

### IV. ANALYSIS

Plaintiff argues the ALJ failed to develop the record with missing mental health treatment notations from "Dr. Reyes." (Dkt. No. 12 at 5-9.) Plaintiff also argues, the ALJ's mental RFC was the product of legal error because there were not medical opinions in the record containing Plaintiff's abilities to perform the mental functional demands of work. (*Id.*) For the reasons outlined below, the ALJ properly developed the record.

To be sure, an "ALJ, unlike a judge in a trial, must on behalf of all claimants … affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-509 (2d Cir. 2009) (citations and alterations omitted). "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir.1999) (internal alterations and quotation marks omitted); *see Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) ("The ALJ's general duty to develop the administrative record applies even where the plaintiff is represented by counsel, but the agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record."); *see Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012).

However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Swiantek*, 588 F. App'x 82, 84 (2d Cir. 2015) (quoting *Rosa,* 168 F.3d at 79 n. 5); *see*

*Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (ALJ not required to develop record where evidence presented is adequate for the ALJ to make a determination).

Plaintiff argues the record was missing treatment notations from Dr. Reyes; however, there is no indication these documents existed or what information the documents may contain. The "theoretical possibility [that records exist] does not establish that the ALJ failed to develop a complete record." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). To be sure, the record contains a reference to Dr. Reyes. A treatment summary from Health Home Partners of Western New York noted Plaintiff "will attend mental health counseling at BPC/Lancaster location." (T. 988.) Another summary indicated Plaintiff "meets with Dr. Ryes [sic] at [Buffalo Psychiatric Center ("BPC")], goal will remain the same 4/10/15 update from [office based opioid treatment ("OBOT")] at BPC – [Plaintiff] will be closed as of May 4, 2015." (T. 990.) A comment stated "3/2/2015 [Plaintiff] attends BPC Lancaster location, goal will remain the same 5/7/2015 [Plaintiff] is closed from BPC and referred for substance [dependence] counseling." (*Id.*) The record contains no other reference to Dr. Reyes.

Prior to Plaintiff's hearing, in a letter dated March 5, 2019, counsel indicated records from Dr. Christian Lates, ECMC, Mercy Hospital of Buffalo, and Sisters of Charity Hospital were outstanding. (T. 189.) Counsel did not assert any records from Dr. Reyes or BPC were outstanding. (*Id.*) At Plaintiff's March 25, 2019, the ALJ and Plaintiff's counsel discussed the evidence in the record and any required development. (T. 32-33.) At the hearing Plaintiff's counsel did not assert any records from Dr. Reyes were missing. (*Id.*) However, Plaintiff's counsel did indicate records from Dr. Lates were still outstanding. (T. 32.) The ALJ held the record open to allow counsel to obtain

7

additional evidence and to provide Plaintiff with a "show cause" letter for failing to appear at his hearing. (T. 33.)

Four months passed between the March 2019 hearing and the ALJ's July 2019 written decision. During that time, in a letter dated April 11, 2019, the ALJ contacted counsel indicating no records had been submitted and to please submit records from "James Coresanti, MD & Christian Laittes [sic]." (T. 191.) The ALJ stated if counsel did not send the evidence, request additional time, or satisfactorily explain why he could not submit the requested evidence in ten days of the letter the ALJ would make a decision based on the available evidence. (*Id.*) Plaintiff's counsel did not respond to the April 2019 letter. In a subsequent letter dated May 15, 2019, the ALJ again contacted counsel requesting submission of records from "Dr. Reyes, Psychiatrist." (T. 192.) The ALJ again stated if counsel did not send the evidence, request additional time, or satisfactorily explain why he could not submit the requested evidence in ten days of the letter the ALJ would make a decision based on the available evidence. (*Id.*) On May 17, 2019, the ALJ again contacted counsel requesting the submission of evidence from Dr. Reyes and "any outstanding mental health treatment records." (T. 193.) Counsel did not respond to the May 2019 letters.

The ALJ did not fail to develop the record. Here, the ALJ and counsel discussed evidence in the record at Plaintiff's hearing and the ALJ held the record open for four months. During those four months the ALJ contacted Plaintiff's counsel three times requesting evidence. The ALJ's letters stated counsel could request additional time or provide an explanation for why evidence was not submitted; however, counsel did neither. *See Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x. 542, 543 (2d Cir. 2005)

(finding that ALJ fulfilled his duty to develop the record where "[a]lthough the ALJ did not contact or obtain records" from treating physician mentioned at hearing, the ALJ held open the record, plaintiff's counsel did not request assistance from the ALJ in obtaining the records, and plaintiff's counsel stated that there was nothing further to add to the record); *Myers ex rel. C.N. v. Astrue*, 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012) (ALJ satisfied duty to develop where plaintiff's counsel "requested and received additional time to obtain the evidence in question" and then "submitted additional evidence following the hearing ... which could have led the ALJ reasonably to conclude that no further records were available or forthcoming"). No additional evidence from Drs. Reyes, Coresanti or Lates was submitted to the AC or this court. Therefore, the ALJ fulfilled her duty to develop the record.

Next, Plaintiff argues the ALJ's failure to develop the record was "significantly harmful" because she formulated the mental RFC determination without an medical opinion. (Dkt. No. 12 at 8-9.) Plaintiff also makes the conclusory argument that the ALJ could not properly assess Plaintiff's subjective complaints without a medical source statement. (*Id.*) Plaintiff's arguments fail.

First, contrary to Plaintiff's assertion, an ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion. The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly

9

correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ. 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."), see id. § 416.946(c) ("the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity"). Additionally, the regulations direct an ALJ to "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." Id. § 416.920c. Therefore, Plaintiff's assertion that the ALJ's RFC determination was the product of legal error because it was not supported by a specific medical opinion is without merit.

Second, the record was sufficient for the ALJ to make a determination. The ALJ based her mental RFC determination on the information provided, and substantial evidence supported the ALJ's determination. *Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (the ALJ is not required to develop the record any further when the evidence already presented is adequate for the ALJ to make a determination as to disability). Although Plaintiff failed to submit required activity of daily living forms, failed to attend a scheduled consultative examination, and failed to attend his hearing, he was represented by counsel at all stages of the application process. (*See* T. 31, 43, 46, 50.) Plaintiffs are cautioned that failure to attend a consultative examination, absent good

10

reason, may result in a finding of not disabled.  20 C.F.R. § 416.918.  The regulations further caution that failure to cooperate in obtaining evidence, will result in a decision being made based on information available.  *Id.* § 416.916.  As outlined by Defendant (Dkt. No. 14 at 10), to the extent Plaintiff contends the ALJ should have considered why he failed to attend the consultative examinations, the ALJ was not afforded the opportunity to do so when Plaintiff failed to attend the administrative hearing or respond to the Request to Show Cause for Failure to Appear.  (T. 31-32, 118-20); *Kevin P. v. Comm'r of Soc. Sec'y*, No. 19-CV-0576, 2020 WL 7231621, at *3 (W.D.N.Y. Dec. 8, 2020) ("plaintiff, having failed without excuse or explanation to attend the consultative examinations, 'cannot now prevail upon a challenge to the adequacy of th[e] record.'").  Regardless of Plaintiff's failure to provide testimony and present to a consultative examination, the record nonetheless contained approximate two-thousand pages of medical records.  (T. 198-2235.)

As held in *Biestek v. Berryhill*, substantial evidence is "more than a mere scintilla" and "means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal citations and quotations omitted).  Here, the record contained "more than a mere scintilla" of evidence regarding Plaintiff's mental functional abilities and the ALJ's analysis of the evidence in the record was adequate to establish a link between the evidence and the RFC.

In formulating Plaintiff's mental RFC, the ALJ relied on treatment notations and objective observations.  The ALJ summarized mental health treatment and mental health observations in 2018 during a period of sobriety.  (T. 20.)  The ALJ noted Plaintiff

established care with Dr. Lates, reported being sober, attending AA meetings daily, and doing well. (*Id.*) The ALJ considered treating source observations that Plaintiff's attitude was cooperative, his affect was normal and his mood was normal. (*Id.*) The ALJ considered Plaintiff's reports in July 2018 that he was sober and felt good emotionally. (*Id.*) Plaintiff also reported having "brain fog." (*Id.*) The ALJ summarized notations from August 2018 during which time Plaintiff's anxiety was controlled, however, his anxiety increased during a relapse episode. (*Id.*) In the end of August 2018, Plaintiff denied any significant depression, but reported being quite anxious. (*Id.*)

Indeed, Physician's Assistant (PA) Brenda Leaird-Kelly observed Plaintiff as bright and interactive with appropriately subdued mood in 2017. (T. 566, 953, 958, 962.) In January 2018, Dr. Corasanti found that Plaintiff had normal mood, clear and appropriate speech and thought, and normal attention span and concentration. (T. 828.) Additionally, reports from Erie County Medical Center also showed generally unremarkable mental examination findings. (T. 854, 876, 896, 906.) In a discharge notation dated September 26, 2018, Plaintiff was noted to have appropriate insight and judgment, was alert and oriented, had an appropriate appearance, no memory impairment, normal thought patter, no apparent hallucinations, and normal mood and affect. (T. 1259.) Dr. Lates' records also showed that Plaintiff had cooperative attitude and normal mood and affect. (T. 2200, 2207, 2212, 2218, 2224, 2229, 2234.) Therefore, substantial evidence supported the ALJ's mental RFC determination.

Overall, the ALJ properly developed the record. The ALJ's determination was not erroneous as a matter of law and based on substantial evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:   November 10, 2022

*[signature: Bill Carter]*
William B. Mitchell Carter
U.S. Magistrate Judge